UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RECEIPT # 51363
AMOUNT $ 150.00
SUMMONS ISSUED____
LOCAL RULE 4.1____
WAIVER FORM____
MCF ISSUED____
BY DPTY. CLK.____

| | |
|---|---|
| DONALD ACHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No: |
| ) | |
| FUJITSU NETWORK COMMUNICATIONS, ) | 03 12099 PBS |
| INC. ) | |
| ) | |
| Defendant. ) | |

MAGISTRATE JUDGE Alexander

### NOTICE OF REMOVAL SIGNED PURSUANT TO RULE 11

Pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and 1446(a), (b), defendant, Fujitsu Network Communications, Inc. ("Defendant") hereby files its notice of removal of the above-captioned action ("Notice") from the Superior Court of Hampden County, Massachusetts to this Court. As grounds for its Notice, Defendant states as follows:

1.   Plaintiff, Donald Acher ("Plaintiff"), filed a Complaint in Worcester Superior Court, Civil Action No. 03-2014B, on October 17, 2003, alleging three claims against Defendant: (i) wrongful termination in violation of public policy, (ii) breach of the implied covenant of good faith and fair dealing and (iii) breach of contract.

2.   Defendant received service of Plaintiff's Complaint on October 20, 2003 and a copy of Plaintiff's Complaint and notice of summons received to Defendant are attached hereto as Exhibit A.

BO:110541v1

3. Plaintiff is a citizen of Massachusetts. Defendant is a citizen of California and has a principal place of business in Richardson, Texas. Plaintiff's demand for damages (i.e., the amount in controversy in this action) exceeds $75,000.

4. This Notice is filed timely pursuant to 28 U.S.C. § 1446(b). As required by 28 U.S.C. § 1446(d), a copy of this Notice will be filed with the Clerk of the Worcester Superior Court and served upon counsel for Plaintiff.

WHEREFORE, Defendant respectfully requests that this action be removed to this Court for adjudication.

Respectfully submitted,

FUJITSU NETWORK COMMUNICATIONS, INC.

By its attorneys,

_____
Barry A. Guryan, BBO # 214920
Jeffrey M. Rosin, BBO #629216
Epstein Becker & Green, P.C.
111 Huntington Avenue
Boston, MA 02199
(617) 342-4000

Dated: October 29, 2003

## CERTIFICATE OF SERVICE

I, Jeffrey M. Rosin, hereby certify on this 29th day of October, 2003, that I served a copy of this Notice by First Class Mail to counsel for Plaintiff:

Gary H. Goldberg, Esq.
120 Main Street
Worcester, MA 01608
(508) 797-1018

_____
Jeffrey M. Rosin

BO:110541v1                              2

CT System
Service of Process Transmittal Form
Boston, Massachusetts
10/20/2003
SOP WS 0005787443

TO:
Melanie Scofield General Counsel
Fujitsu Network Communications, Inc.
2801 Telecom Parkway
Richardson, TX  75082-0000

Phone: (972) 479-2931 ex:
FAX: (972) 479-2992
EMAIL: MELANIE.SCOFIELD@FNC.FUJITSU.COM

RE:
PROCESS SERVED IN MASSACHUSETTS

FOR
Fujitsu Network Communications, Inc. Domestic State: Ca

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:
Donald Acher, Pltf. vs Fujitsu Network Communications, Inc., Deft.

2. DOCUMENT(S) SERVED:
Summons, Complaint

3. COURT:
Commonwealth of Massachusetts, Worcester Superior Court Dept. of the Trial Court
Case Number 03-2014B

4. NATURE OF ACTION:
Breach of Contract, Wrongful Termination in Violation of Public Policy

5. ON WHOM PROCESS WAS SERVED:

CT Corporation System, Boston, Massachusetts

6. DATE AND HOUR OF SERVICE:
By Process server on 10/20/2003 at 15:00

7. APPEARANCE OR ANSWER DUE:
Within 20 Days

8. ATTORNEY(S):
Gary H. Goldberg
120 Main St.
Worcester, MA  01608

9. REMARKS:
i-Note sent 10/20/2003 to MELANIE.SCOFIELD@FNC.FUJITSU.COM

SIGNED
CT Corporation System

PER
Christina Bonney

ADDRESS
101 Federal Street
Boston, MA  02110

SOP WS 0005787443

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 03-2014B | Trial Court of Massachusetts Superior Court Department County: Worcester |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Donald Acher | Fujitsu Network Communications, Inc. |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>Gary H. Goldberg, Esquire, 120 Main Street, Worcester, MA 01608 (508) 797-1018<br>Board of Bar Overseers number: | ATTORNEY (if known) |

**Origin code and track designation**

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B99 | wrongful termination | (F) | (X) Yes ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................. $
2. Total Doctor expenses ................................. $
3. Total chiropractic expenses ........................... $
4. Total physical therapy expenses ...................... $
5. Total other expenses (describe) ...................... $

Subtotal $ ..........
B. Documented lost wages and compensation to date ........... $100,000
C. Documented property damages to date ...................... $
D. Reasonably anticipated future medical and hospital expenses $
E. Reasonably anticipated lost wages ......................... $200,000/yr
F. Other documented items of damages (describe)

$ ..........

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Acher was terminated in violation of public policy. Fujitsu breached the implied covenant of good faith and fair dealing, and his sales incentive plan.

TOTAL $ ..........

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

See above

TOTAL $ See above

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _/s/ Gary H. Goldberg_ DATE: _____

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## CIVIL ACTION COVER SHEET
## INSTRUCTIONS

### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

| | CONTRACT | | | REAL PROPERTY | | | MISCELLANEOUS | |
|---|---|---|---|---|---|---|---|---|
| A01 | Services, labor and materials | (F) | C01 | Land taking (eminent domain) | (F) | E02 | Appeal from administrative | (X) |
| A02 | Goods sold and delivered | (F) | C02 | Zoning Appeal, G.L. c.40A | (F) | | Agency G.L. c. 30A | |
| A03 | Commercial Paper | (F) | C03 | Dispute concerning title | (F) | E03 | Action against Commonwealth | |
| A08 | Sale or lease of real estate | (F) | C04 | Foreclosure of mortgage | (X) | | Municipality, G.L. c.258 | (A) |
| A12 | Construction Dispute | (A) | C05 | Condominium lien and charges | (X) | E05 | All Arbitration | (X) |
| A99 | Other (Specify) | (F) | C99 | Other (Specify) | (F) | E07 | c.112,s.12S (Mary Moe) | (X) |
| | **TORT** | | | | | E08 | Appointment of Receiver | (X) |
| B03 | Motor Vehicle negligence- | | | **EQUITABLE REMEDIES** | | E09 | General contractor bond, | |
| | personal injury/property damage | (F) | D01 | Specific performance of contract | (A) | | G.L. c.149,s.29,29a | (A) |
| B04 | Other negligence-personal | | D02 | Reach and Apply | (F) | E11 | Workman's Compensation | (X) |
| | injury/property damage | (F) | D06 | Contribution or Indemnification | (F) | E14 | Chapter 123A Petition-SDP | (X) |
| B05 | Products Liability | (A) | D07 | Imposition of Trust | (A) | E15 | Abuse Petition, G.L.c.209A | (X) |
| B06 | Malpractice-medical | (A) | D08 | Minority Stockholder's Suit | (A) | E16 | Auto Surcharge Appeal | (X) |
| B07 | Malpractice-other(Specify) | (A) | D10 | Accounting | (A) | E17 | Civil Rights Act, G.L.c.12,s.11H | (A) |
| B08 | Wrongful death,G.L.c.229,s2A | (A) | D12 | Dissolution of Partnership | (F) | E18 | Foreign Discovery proceeding | (X) |
| B15 | Defamation (Libel-Slander) | (A) | D13 | Declaratory Judgment G.L.c.231A | (A) | E96 | Prisoner Cases | (F) |
| B19 | Asbestos | (A) | D99 | Other (Specify) | (F) | E97 | Prisoner Habeas Corpus | (X) |
| B20 | Personal Injury-Slip&Fall | (F) | | | | E99 | Other (Specify) | (X) |
| B21 | Environmental | (A) | | | | | | |
| B22 | Employment Discrimination | (F) | | | | | | |
| B99 | Other (Specify) | (F) | | | | | | |

### TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | ☒ Yes   ☐ No |

### SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

**A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT, BUFF COLOR PAPER.**

**FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN DISMISSAL OF THIS ACTION.**

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

WORCESTER, SS.:

03-2014

DONALD ACHER,
      Plaintiff,

v.

FUJITSU NETWORK COMMUNICATIONS, INC.
      Defendant.

## VERIFIED COMPLAINT AND JURY DEMAND

**Introduction**

1. Donald Acher, a former employee of Fujitsu Network Communications, Inc., files this complaint for wrongful termination for violation of public policy and for unpaid commissions/breach of the implied covenant of good faith and fair dealing.

**Parties**

2. Donald Acher ("Acher") is an adult resident of the Commonwealth of Massachusetts, residing at 17 Tara Road, Southboro, MA 01772.

3. Fujitsu Network Communications, Inc. ("Fujitsu"), a corporation formed under the laws of the state of California, has a place of business at 33 Boston Post Road, Marlboro, MA 01752. Fujitsu's resident agent for service of process is CT Corporation, 101 Federal Street, Boston, MA 02110.

**Jurisdiction**

4. Jurisdiction is conferred on this court pursuant to M.G.L. c. 223A, s. 2 and 3.

**Facts**

5. Acher was employed with Fujitsu as a Senior Sales Manager for the New England Region (Maine, Massachusetts, New Hampshire, Rhode Island and Vermont) from August, 1993 through June 11, 2003. As of June, 2002, Acher's performance was deemed exceptional. At various times throughout his tenure with Fujitsu, Acher received honors and awards for his sales, exceeding quotas and total bookings.

6. Acher's compensation included a $125,000 base salary, $450 monthly car allowance, and commission, which, prior to 2003, generally ranged between $70,000 and $80,000 per year.

7. The commission was based upon a sales incentive plan. The sales incentive plan was divided into halves, the first half from April 1, 2003 through September 30, 2003 and the second half from October 1, 2003 through March 31, 2004. Quotas were established for each half year and commissions were based upon the preset quota, total bookings for the region, market penetration and the type of product sold.

8. As of June, 2003, Acher had met 50% of the first half's quota.

9. As a Senior Sales Manager for the New England region, Acher's primary account was Verizon. Verizon utilizes telecommunication equipment furnished by Fujitsu, as well as other vendors, to provide telecommunication services to the public.

10. The Verizon account was divided into two main components: the interoffice facility account (IOF) and the outside plant account (OSP).

11. Due in large part to Acher's efforts over the past 10 years, Fujitsu had 100% market share of the Verizon IOF account and approximately 70% of the market share of Verizon's outside plant account in the New England region.

12. Throughout 2002, Fujitsu was developing its proposal for its newest telecommunication hardware system: Flashwave 4000 Series Next Generation Sonet.

13. In or about the Fall, 2002, Vice President of Sales, Doug Moore, shared his beliefs that he wanted Fujitsu to increase its market share with Verizon, especially in the New York region and in the New England account relating to the outside plant.

14. Moore indicated that Fujitsu was planning to incorporate into its proposal that Verizon remove any competitive hardware that could be utilizing valuable floor space for potential Fujitsu equipment.

15. Acher discussed the removal of the competitors' racks with Henry Gamsby, Director of the Outside Plant for Verizon-Massachusetts. Gamsby indicated that Verizon would be willing to "retire" the competitive equipment, but not remove same for at least 1 to 2 years.

16. Acher relayed Gamsby's perspective on the removing of the equipment to Moore. Moore was not satisfied that simply retiring the competitors' equipment would address Fujitsu's need to expand market share.

17. In or about January, 2003, a sales conference call was held with Richard Stopsky (Sales Manager-NY), David Sandor (Business Manager), William Lewis (Director, NY/NE Sales), Acher and Moore attending.

18. In an attempt to secure 100% market share of the Verizon account in New York and the outside plant account in New England, Moore was requiring that the proposal submitted to Verizon for purchase of Fujitsu's Flashwave 4000 Series Next Generation Sonet include a requirement that Fujitsu's competitors' hardware, at Verizon, be destroyed, removed or rendered inoperable.

19. During this and other related conference calls, Acher voiced his concerns about this portion of the proposal, especially relating to the "rendering inoperable" of competitors' equipment. Acher strongly argued that in doing so, there would be a serious safety concern due to the impact on the integrity of Network Equipment Building Systems (NEBS).

20. Verizon requires all of its vendors to adhere to NEBS standards, which are intended to ensure that equipment and systems provide reliable service when less than ideal conditions are present without disrupting other services provided by nearby carriers or third party owned equipment and without posing undue safety risks and hazards.

21. Ultimately, after much discussion, that provision was removed from the proposal.

22. Over the course of the next several months, Acher made numerous presentations to Verizon management and engineers regarding the Flashwave 4000 Series. At no point during these presentations, until April 8, 2003, were there any comment or discussion regarding the removal, destruction or elimination of any of Fujitsu's competitors' equipment.

23. On or about April 8, 2003, Lewis accompanied Acher to the sales presentation at Verizon. Lewis, for reasons unknown, indicated to Verizon representatives Bruce Spinney, Frank Tracy, Henry Gamsby, and Bob Callahan, that Acher worked very hard in keeping out a requirement of damaging 'Lucent shelves.'

24. Acher was shocked at this extraordinary comment and observed that the Verizon representatives were equally puzzled by the remark.

25. In May, 2003, the Fujitsu proposal to Verizon was accepted regarding the Flashwave 4000 Series Next Generation Sonet.

26. On June 11, 2003, Acher was arbitrarily dismissed, without warning, by Lewis, who indicated to Acher, "the way you run the account, we need to part company." No specifics

or explanations were offered.

## Count I
### Wrongful Termination in Violation of Public Policy

27. Acher incorporates by reference herein the allegations contained in paragraphs 1 through 26.

28. Destruction of competitors' telecommunication equipment would severely compromise public safety and the NEBS standards adopted by Verizon.

29. Moore's initial requirement that the proposal to Verizon to have Fujitsu's competitors' equipment destroyed or made inoperable violates public policy by creating an undue safety risk for the public by jeopardizing the integrity of Verizon's telecommunication services.

30. Acher expressed his opposition and utter disbelief regarding Moore's proposal.

31. As a direct result of voicing his opposition to Moore's proposal to Verizon to have Fujitsu's competitors' equipment destroyed or made inoperable, Acher was wrongfully terminated on June 11, 2003 in violation of public policy.

32. As a result of his wrongful termination, Acher has suffered lost wages and benefits, lost commissions and bonuses, emotional distress, other compensatory damages and attorney's fees and costs.

## Count II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

33. Acher incorporates by reference herein the allegations contained in paragraphs 1 through 32 above.

34. As part of Acher's employment with Fujitsu, the terms and conditions of his employment included a sales incentive plan.

35. Throughout the course of Acher's employment with Fujitsu, he had always

received commissions based upon his region's sales, and oftentimes received additional compensation, rewards and recognition for reaching an extremely high level of sales.

36. At the time of his discharge in June, 2003, Fujitsu's proposal to Verizon for the New England region had been accepted by Verizon.

37. Following June, 2003, and based upon Fujitsu's proposal being accepted by Verizon, additional sales have been generated. Acher would have been entitled to commissions on these sales based upon the work he had already performed.

38. As a direct result thereof, Fujitsu has breached its covenant of good faith and fair dealing with Acher by not providing him with commissions already earned. Acher has suffered damages, including, but not limited to, unpaid commissions.

## Count III
### Breach of Contract

39. Acher incorporates by reference herein the allegations contained in paragraphs 1 through 38 above.

40. Acher's employment with Fujitsu included an employment contract, which incorporated a sales incentive plan.

41. The sales incentive plan provided for commissions to be paid to Acher in relationship to half year quotas and based upon the total sales in the New England Region.

42. Throughout Acher's employment, he had regularly received commissions based upon previous sales incentive plans in existence with Fujitsu at the time.

43. As a direct result thereof, Fujitsu has breached its employment contract with Acher by not providing him with commissions earned and/or future commissions to be earned. Acher has suffered damages, including, but not limited to, unpaid commissions.

WHEREFORE, Plaintiff requests this Honorable Court to award damages as follows:

Under Count I, lost wages and benefits, unpaid commissions, emotional distress, other compensatory damages and attorney's fees and costs.

Under Count II, unpaid commissions and any other remedies that this court deems appropriate in awarding.

Under Count III, unpaid commissions and any other remedies that this court deems appropriate in awarding.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

>                    Plaintiff, Donald Acher
>                    by his attorney
>
>                    _____
>                    Gary H. Goldberg
>                    120 Main Street
>                    Worcester, MA 01608
>                    (508)797-1018
>                    BBO #: 553887

Dated: October __, 2003

## VERIFICATION OF COMPLAINT

I, Donald Acher, am the Plaintiff in this action and I am familiar with the subject matter of this action. I have read the factual allegations set forth herein and believe the same to be true except as those stated to be upon information and belief and to the extent I believe the same to be true.

_____

## COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.:                                                          October __, 2003

Then personally appeared before me the above, Donald Acher, Plaintiff in this action, and acknowledge he has read the foregoing complaint and knows the contents thereof and that the facts stated herein are true except such facts as may be stated to be alleged information and belief and as to those he believes them to be true.

Subscribed and sworn to before me this ___ day of _____, 2003

_____
Notary Public