UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DONALD ACHER<br><br>*Plaintiff,*<br>v.<br><br>FUJITSU NETWORK COMMUNICATIONS, INC.<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 03-12099 (PBS)<br>)<br>)<br>)<br>)<br>) |

### MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant, Fujitsu Network Communications, Inc. ("FNC"), hereby moves to compel arbitration of the claims in the Complaint of plaintiff/former employee, Donald Acher ("Acher") filed against FNC in Massachusetts Superior Court, Worcester County and removed to this Court ("Complaint"). Alternatively, FNC moves for dismissal of Acher's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### BACKGROUND

Acher worked for FNC from August 1993 until the termination of his employment on June 11, 2003. (See Complaint, ¶¶ 5, 26) In his Complaint against FNC, Acher alleges three claims: (1) wrongful termination in violation of public policy; (2) breach of the implied covenant of good faith and fair dealing under a Sales Incentive Plan ("Plan"); and (3) breach of contract to pay him commissions under the same Plan. (Id. ¶¶ 27-43)

FNC has an Arbitration Policy which is applicable to "All Employees" and requires the arbitration of Acher's claims. A true and correct copy of FNC's Arbitration Policy is attached as Exhibit A to the affidavit of FNC Senior Vice President and General Counsel, Melanie Scofield, provided herewith. Section 1.1 provides:

> Any dispute between an employee and FNC arising out of the employee's employment with the Company or its termination, including without limitation any claim of **wrongful termination, breach of implied contract**, discrimination, unlawful harassment, including sexual harassment, **breach of the convenant of good faith and fair dealing, violations or public policy,** or any federal or state law, or as to all the preceding, any related claims of defamation, or infliction of emotional distress, which are not resolved by the Company and employee through direct discussion or mediation, will be submitted exclusively to final and binding arbitration in accordance with the Company's Arbitration Procedures. A copy of the Procedures is attached.

(See Scofield Affidavit, Exhibit A at § 1.1 (emphasis added)) The highlighted claims above are those which Acher asserts against FNC. When the Arbitration Policy was first issued at FNC, it was circulated to all employees by way of a Memorandum dated September 22, 1994, a true and correct copy of which is attached as Exhibit B to the Scofield Affidavit.[1] As set forth therein, FNC also held presentations to discuss and explain the Policy. (See Exhibit B at 2)

A true and correct copy of the Sales Incentive Plan referenced in Acher's Complaint is attached as Exhibit A to the Affidavit of Doug Moore provided herewith. As set forth therein, there were two ways for Acher to receive sales incentive compensation – i.e., through (1) Quota Attainment ("QA") and (2) Market Focus ("MF"). (See Moore Affidavit, Exhibit A at 3) The QA side of the Plan allowed for varying levels of bonus money to be earned based on an employee meeting the quotas that had been set for him. (Id. at 3) Quotas were assigned "based on individual bookings only." (Id. at 2) The MF side of the Plan allowed an employee to earn a commission based on the sale of certain products and/or services that had been were designated for market penetration. (Id. at 3)

According to the Plan, termination of employment meant that QA would be "pro-rated based on time with the company and based on performance **as of last day worked**. (Id. at 7 (emphasis added)) For MF, Acher could be paid "based on MF-eligible bookings generated

---

[1] FNC used to be known as Fujitsu Network Transmission Systems, Inc. ("FNTS"), and Acher was an employee of FNTS. (See Scofield Affidavit, ¶ 2)

2

from [the] beginning of [the] fiscal half to [the] **last day worked**. (Id. (emphasis added)) There was no ability to earn commissions based on sales made after employment terminated. (See Moore Affidavit, ¶ 3)

## ARGUMENT

### I. FNC's Motion To Compel Arbitration Should Be Granted

There is a strong federal and Massachusetts policy in favor of arbitration of claims. See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960); Local Union No. 1710, Int'l Ass'n of Fire Fighters v. Chicopee, 721 N.E.2d 378, 381 (Mass. 1999). Arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers, 363 U.S. at 582-83.

Here, Acher cannot claim that the Policy is susceptible to an interpretation which does not cover his dispute. Acher is a former employee of FNC; he alleges claims arising out of the termination of his employment; and he alleges claims specifically mentioned in the Policy as being subject to arbitration. See, e.g., Carpenter v. Pomerantz, 634 N.E.2d 587, 589 (Mass. App. Ct. 1994) (arbitration clause which spoke to arbitration of disputes regarding termination covered plaintiff's claims); Weiss v. Atholl, No. 963679, 1998 WL 1184150, at *2 (Mass. Super. Dec. 28, 1998) (claims mentioned in arbitration policy subject to arbitration). Acher had notice of the Policy upon its adoption, and he continued to work for FNC for nearly 9 years thereafter. (See Scofield Affidavit, Exhibit B) As such, Acher is obligated to arbitrate his claims.[2]

FNC's Motion to Compel Arbitration should be granted at this time.

---

[2] Acher is obligated to arbitrate even if he didn't "sign onto" the arbitration policy. See, e.g., Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001); Chanchani v. Salomon/Smith Barney, No. 99 Civ. 9219, 2001 WL 204214, *3 (S.D.N.Y. March 1, 2001) (citing, Thomson-CSF S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 777 (2d Cir. 1995)).

3

## II. Alternatively, This Court Should Dismiss Acher's Complaint For Failure To State A Claim

In the event this Court decides that it has authority to adjudicate Acher's claims, they should be dismissed pursuant to Rule 12(b)(6).

### A. Count I of Acher's Complaint for Wrongful Termination In Violation of Public Policy Should Be Dismissed

Count I of Acher's complaint concerns Acher's alleged disagreement with other members of FNC's sales team about the terms of a proposal FNC was making to Verizon. Acher felt that FNC's proposal, which called for Verizon to render competitor equipment inoperable in exchange for using FNC equipment, raised a "serious safety concern." (See Complaint, ¶¶ 19, 28) Acher claims that as a result of voicing his concern about the proposal, FNC terminated his employment (Id. ¶ 31) On the face of his Complaint, Acher does not state a claim for a violation of public policy.

"[W]hether there [is] a public policy violation is a question of law for the judge[.]" See Smith-Pfeffer v. Superintendent Of The Walter E. Fernald State School, 533 N.E.2d 1368, 1372 (Mass. 1989). The Supreme Judicial Court ("SJC") consistently interprets the public policy exception to the employment at-will doctrine narrowly. See King v. Driscoll, 638 N.E.2d 488, 492 (Mass. 1994) (citations omitted). The discharge at-issue must be shown to be in violation of a "**clearly defined** public policy." GTE Products Corp. v. Stewart, 653 N.E.2d 161, 163 (Mass. 1995) (emphasis added). The exception specifically does not cover internal complaints about public safety concerns. See id; see also King, 638 N.E.2d 492-93; see also Wright v. Shriner's Hospital for Cripled Children, 589 N.E.2d 1241, 1244-45 (Mass. 1992); Smith-Pfeffer, 533 N.E.2d at 1371; Mistishen v. Falcone Piano Company, Inc., 630 N.E.2d 294, 296 (Mass. App. Ct. 1994).

4

In Smith-Pfeffer, the SJC recognized that the exception applies only if an employee is "terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury). See 533 N.E.2d at 1371. There, the SJC held that the plaintiff's claim that she was terminated for opposing a reorganization plan that she felt was a "threat to the well-being" of a mental health facility and its residents failed to state a claim that could be submitted to a jury. Id. at 1371-72. The SJC refused to extend the public policy exception to the employment at-will doctrine to employees who claim they are discharged for "performing appropriate, socially desirable duties." Id. at 1371.

Similarly, in Wright, the SJC held that no public policy protected a discharged plaintiff who claimed that she was fired from a hospital in retaliation for her having criticized the hospital's quality of care to patients. See 589 N.E.2d at 1245. In Wright, the plaintiff actually pointed to statutes that protect the quality of care provided to patients, but the SJC noted that those statutes did not protect the kind of internal reporting at-issue in the case. Id. at 1244-45 ("[i]nternal matters, inkling internal policies, could not be the basis of a public policy exception to the at-will rule") (quoting, Smith-Pfeffer, 533 N.E.2d at 1368)).

Even in Stewart, the SJC found the plaintiff failed to establish a claim under the public policy exception despite his assertion "that he had been wrongfully discharged in retaliation for his continual attempts to convince GTE management to warn the public about safety risks associated with the use of certain GTE products, and his insistence that GTE comply with Federal law governing the disposal of hazardous waste." See 653 N.E.2d at 163. The Appeals Court reached the same result in Mistishen, where the plaintiff claimed that his employer was selling defective products to customers. See 630 N.E.2d at 295-96.

Here, the face of Acher's Complaint does not establish that he was asserting a legally guaranteed right, doing something that the law required, or refusing to do something that the law forbids. Instead, it only establishes that Acher opposed a sales strategy that *he felt* might jeopardize public safety *if Verizon decided to accept it and implement it*. Acher's claim in this regard is not only speculative, but it assumes Verizon would actually engage in some act that harmed public safety. Acher has no basis for that assumption in its own right, let alone that FNC had control over how Verizon ran its own business.

This Court should dismiss Count I of Acher's Complaint for failure to state a claim.

### B. Count II Should Be Dismissed For Failure To State A Claim

Count II of Acher's Complaint alleges that FNC violated the Implied Covenant of Good Faith and Fair Dealing in his termination by depriving him of commissions "already earned." (See Complaint, ¶ 38) A careful look at Acher's claim, however, demonstrates that the commissions he claims to be owed are those which would have come from "additional sales" made by FNC after Acher's termination. (See Complaint, ¶ 37) Notably, Acher does not articulate any commissions he purportedly earned by the time of his termination for past services performed, but that he was not paid. Yet, this a required element of Count II of his Complaint.

In that regard, the Implied Covenant of Good Faith and Fair Dealing allows a discharged employee to bring a claim for commissions earned at the time of termination. See Gram v. Liberty Mut. Ins. Co., 461 N.E.2d 796, 797 (Mass. 1984). The SJC has specifically rejected claims like Acher's that he would have earned something in the future "through past work performance." See McCone v. New England Tel. and Tel. Co., 471 N.E.2d 47, 50 (Mass. 1984). In McCone, the SJC affirmed the Rule 12(b)(6) dismissal of the plaintiff's implied covenant claim because the allegations in his complaint established only that he was seeking damages for the loss of future salary increases and pension benefits which he would have earned had he

6

remained employed. Id. Even though the salary/benefits the plaintiff could have earned were tied to his length of employment at the company (i.e., his past service), the SJC held that the plaintiff's damages were tied to income that would only have been earned for future service. Id.

Here too, Acher seeks compensation for additional sales that were purportedly generated by way of FNC's relationship with Verizon after his termination. He claims that he would have been entitled to commissions on these sales based on his past work if he had remained employed. Not only does Acher's claim contradict the clear terms of the Plan when termination occurs (see Background, supra), but Acher's claim is no different than that of the plaintiff in McCone. Like that claim, Acher's Implied Covenant claim should be dismissed pursuant to Rule 12(b)(6).

### C.  Count III Should Be Dismissed For Failure To State A Claim

Count III of Acher's Complaint alleges a breach of contract. Specifically, Acher claims that FNC breached the Plan which allegedly provided a means by which he would earn commissions in half-year quotas and based on total sales in the New England Region. (See Complaint, ¶¶ 40-41) Acher's claim is founded upon the suggestion that he is entitled to commissions he might have earned had he remained employed. No such commissions can be earned after termination of employment, however. (See Moore Affidavit, Exhibit A, ¶ 3)

For this reason, Count III of Acher's Complaint fails and it should be dismissed.

## CONCLUSION

For the reasons above, Defendant's Motion to Compel Arbitration should be granted or, alternatively, this Court should dismiss Acher's Complaint for failure to state a claim.

                Respectfully submitted,

                FUJITSU NETWORK COMMUNICATIONS, INC.

                By its attorneys,

                Barry A. Guryan, BBO #214920
                Jeffrey M. Rosin, BBO #629216
                Epstein, Becker & Green, P.C.
                111 Huntington Avenue
                Boston, MA 02199
                (617) 342-4000

Dated: November 5, 2003

## CERTIFICATE OF SERVICE

I, Jeffrey M. Rosin, hereby certify on this 5th day of November 2003, that I served a copy of this Motion by First Class Mail to counsel for the plaintiff:

    Gary H. Goldberg, Esq.
    Attorney at Law
    120 Main Street
    Worcester, Massachusetts 01608
    (508) 797-1018

                Jeffrey M. Rosin

**EPSTEIN BECKER & GREEN, P.C.**

ATTORNEYS AT LAW

111 HUNTINGTON AVENUE
26TH FLOOR
BOSTON, MA 02199-7610
617.342.4000
FAX: 617.342.4001
EBGLAW.COM

November 5, 2003

**HAND DELIVERY**

Office of the Civil Clerk
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Boston, MA 02210

    Re:  Donald Acher v. Fujitsu Network Communications,
           Inc.: Civil Action No. 03-12099 (PBS)

Dear Sir/Madam:

      On behalf of the Defendant in the above-referenced matter, pending before the Honorable Patti B. Saris, enclosed for filing, please find the following pleadings:

- Defendant's Motion to Compel Arbitration Or, Alternatively, Dismiss Claims;
- Affidavit of Melanie Scofield;
- Affidavit of Douglas Moore;
- Local Rule 7.1 Statement.

                                                              Respectfully submitted,

                                                              Jeffrey M. Rosin

cc:    Gary H. Goldberg, Esq.

ATLANTA • BOSTON • CHICAGO • DALLAS • HOUSTON • LOS ANGELES
NEWARK • NEW YORK • SAN FRANCISCO • STAMFORD • WASHINGTON, D.C.

BO:111384v1

EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY