UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, SS.:                                  Civil Action No. 03 12099 PBS

---

DONALD ACHER,
                Plaintiff,

v.

FUJITSU NETWORK COMMUNICATIONS, INC.
                Defendant.

---

## **AFFIDAVIT OF DONALD ACHER**

I, Donald Acher, to hereby state under oath as follows:

1.    I am the Plaintiff in this action against Fujitsu Network Communications, Inc.

2.    I have been employed with Fujitsu since August, 1993 up to and including June 11, 2003.

3.    I was employed with Fujitsu when it was called Fujitsu Network Transmissions Systems, Inc.

4.    I have reviewed the affidavit prepared by Melanie Scofield.

5.    Throughout the course of my employment with Fujitsu, I have never been provided a copy of, or informed of the existence of, any arbitration policy as referenced in her affidavit. I have never seen the September 22, 1994 memorandum regarding arbitration, the question and answer attachment referencing mandatory arbitration for all employees, nor any revision to the arbitration policy.

6.    Throughout the course of my employment, I have been required to sign confidentiality and proprietary agreements, some of which have been signed on an annual basis. I

have never been asked to sign any document acknowledging my knowledge of the arbitration policy or my agreement with the policy.

7. If I was presented with an arbitration policy during my employment, I would not necessarily have continued my employment with Fujitsu.

8. Following my separation from Fujitsu in June, 2003, I was provided with "Employment Separation Agreement and Release of All Claims." In paragraph 17 of the original Release, it notes as follows, "With the exception of the Employee Proprietary Information and Invention Agreement which remains in full force and effect, there are no other contractual agreements between the Company and the Employee. This is the entire agreement regarding the subject matter hereof and supersedes all previous and contemporaneous discussions, negotiations, agreements and understandings related thereto. No other promises or agreements have been made, and there are no other contractual relationships between Company and Employee."

9. The first time that I saw the arbitration agreement that is referenced by Attorney Scofield is subsequent to my termination in June, 2003.

10. In reference to the Sales Incentive Plan, as referenced in Douglas Moore's affidavit, as Senior Sales Manager for the New England Region, I was provided commissions based upon efforts made by myself and employees within the region as it relates to quotas, total bookings, market penetration and the type of product sold.

11. In May, 2003, after months of negotiations, the proposal to Verizon regarding the Flashwave 4000 Series Next Generation Sonet was accepted. Based upon this agreement being accepted, I was expected to receive commissions for the balance of the half fiscal year (through September 30, 2003). These commissions were reasonably anticipated based upon my past services. These commissions were not based upon any future service that needed to be

performed.

    Signed under the pains and penalties of perjury this 14 day of November, 2003.

_____
Donald Acher