UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2003 DEC 19  P 1:56

U.S. DISTRICT COURT
DISTRICT OF MASS.

DONALD ACHER

    *Plaintiff,*

v.

FUJITSU NETWORK COMMUNICATIONS, INC.

    *Defendant.*

CIVIL ACTION NO. 03-12099

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE,
DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant, Fujitsu Network Communications, Inc. ("FNC"), hereby submits this Reply Memorandum of Law ("Reply") in further support of its Motion to Compel Arbitration or, in the Alternative, Dismiss Complaint for Failure to State a Claim ("Motion"). This Reply is submitted to respond to certain points raised in the Opposition of plaintiff, Donald Acher ("Acher") to FNC's Motion ("Opposition"). Namely:

    1.    Acher did have notice of FNC's Arbitration Policy;

    2.    Acher's continued employment with FNC after FNC adopted its Arbitration Policy was sufficient consideration to support the agreement to arbitrate; and

    3.    If Arbitration is not proper, Count I of Acher's Complaint should still be dismissed.[1]

---

[1] While Acher's Complaint has three Counts, this Reply only addresses Acher's Opposition arguments as to Count I. FNC rests on the arguments in its initial Motion with regard to Counts II and III.

## ARGUMENT

### I. FNC's Motion To Compel Arbitration Should Be Granted

Acher correctly points out in his Opposition that arbitration is a matter of contract. (See Opposition at 4)  In O'Brien v. New England Telephone & Telegraph Co., 422 Mass. 686 (1996), the Supreme Judicial Court ("SJC") analyzed whether employment policies form a contract under Massachusetts law.  The SJC found that an employee remaining with his employer after receiving a personnel manual provides the "consideration" necessary to support the formation of an employment contract as to certain policies therein. Id. at 691-692.

Such is the situation here when Acher continued his employment with FNC after FNC's adoption of its Arbitration Policy.  Indeed, the Reply Affidavit of Melanie Scofield, submitted herewith, demonstrates that beginning in 199_, all company policies, including the Arbitration Policy, were posted on FNC's intranet, an intra-company website ("Intranet"). (See Reply Affidavit of Melanie Scofield, ¶ 2)  All employees are charged with both awareness of, and abiding by, these policies. (Id. ¶ 3)  Further, throughout his employment, Acher had access to FNC's Intranet on his work computer, and there is no legitimate basis for him to claim that he did not have the ability to review the Arbitration Policy on the Intranet. (Id. ¶¶ 3-4)  While Acher claims in his Opposition that his notice of the Arbitration Policy is a disputed fact (see Opposition at 4), in light of FNC's Intranet (which Acher fails to mention), his claim amounts to an unsupportable defense of willful (or negligent) blindness.

Under O'Brien, the mere fact that FNC posted its Arbitration Policy on the Intranet, that Acher had the opportunity to review it, and that Acher continued his employment thereafter

should be sufficient for this Court to enforce FNC's Arbitration Policy against Acher.[2]

FNC's Motion to Compel Arbitration should be granted.

## II.  Neither Acher's Complaint (Nor His Opposition) Can Sustain His Claim For Wrongful Termination In Violation Of Public Policy

Assuming the allegations of Acher's Complaint (and his paraphrasing of those allegations in his Opposition) as true, Acher's claim in Count I amounts to the assertion that he was terminated for speaking out against the following scenario:  FNC was *considering* making a sale proposal to Verizon Communications ("Verizon") which, *if* Verizon accepted, *could have caused* Verizon to take an action that *might* have harmed the provision of reliable telecommunication service. (See Opposition at 8)

FNC has already demonstrated in its Motion that Acher's public policy claim fails Rule 12(b)(6) standards, most notably because, at best, it concerns an internal complaint about the handling of an internal matter and had, by Acher's view, an attenuated relationship to public safety. (See Motion at 4-6 (and citations therein))  To survive FNC's Motion to Dismiss, Acher is supposed to allege that FNC terminated his employment in violation of a "clearly defined" public policy. See GTE Products Corp. v. Stewart, 653 N.E.2d 161, 163 (Mass. 1995) (emphasis added).  Acher's assertions regarding the interrelationship of telecommunications laws with "NESB" and "ANSI" standards do not measure up, particularly since Acher has not (and cannot) allege that FNC's proposal would have violated any of these laws or standards.[3]

---

[2]  Acher erroneously argues in his Opposition that FNC's Arbitration Policy limits him to one deposition and limits him to ten days to oppose a Motion for Summary Judgment. (See Opposition at 5)  With the approval of the Arbitrator, FNC's Arbitration Policy permits Acher to take as many depositions as he needs and seek all appropriate extensions he needs to file his pleadings. (See Affidavit of Melanie Scofield submitted with FNC's Motion, Exhibit A thereto (Arbitration Procedures, ¶¶ 4.A and 6.B))

[3]  It is worth noting that, as Acher concedes, FNC did not even end up making this proposal to Verizon. (See Complaint, ¶ 21)

The cases Acher cites in his Opposition do not assist his claim. In <u>Frost v. TGI Friday's Inc.</u>, No. 011015, 2001 WL 18552227, at *1 (Mass. Super. Dec. 6, 2001), the employee was fired after he warned a customer that what he was eating at the restaurant may not be sanitary, arguably an "important public deed" and something that the SJC already recognized would fall within the public policy exception. <u>Id.</u> (citing, <u>Flesner v. Technical Communications Corp.</u>, 410 Mass. 805, 810-811 (1991)) In both <u>Rizzo v. Life Care Centers of America, Inc.</u>, No. 9700445B, 1999 WL 1203792, at *1 (Mass. Super. Oct. 5, 1999), and <u>Apesso v. Memorial Press Group</u>, No. 01-1471-A, 2002 WL 31324415, at *1 (Mass. Super. Sept. 30, 2002), the employees involved alleged that they were fired for doing what the law required -- i.e., ensuring the internal enforcement of nursing home laws and attending court. In <u>Sellig v. Visiting Nurse & Community Health</u>, No. 98-0037, 1999 WL 515795, at *4-5 (Mass. Super. June 10, 1999), the employee allege that he was fired for asserting a legally guaranteed right – i.e., his right to consult an attorney. As was the case with <u>Frost</u>, each of the situations at-issue in <u>Rizzo</u>, <u>Apesso</u> and <u>Sellig</u> were well-within the SJC's guidelines for properly pleading a "public policy" claim. See <u>Smith-Pfeffer v. Superintendent</u>, 404 Mass. 145, 149-50 (1989) (an employee cannot be terminated for "doing what the law requires" or "asserting a legal right").[4]

In contrast, the layers of speculation that form Acher's argument in support of Count I do not state a claim. As FNC pointed out in its Motion, the "public policy" exception to the employment at-will doctrine is construed narrowly. (<u>See</u> Motion at 4) A narrow construction of

---

[4] Acher cites two additional cases for the proposition that "internal complaints to management" are sufficient to state a public policy claim. (<u>See</u> Opposition at 7, n.7 (citing, <u>Shea v. Emmanuel College</u>, 425 Mass. 761 (1997); <u>Smith v. Mitre Corp.</u>, 949 F. Supp. 943 (D. Mass. 1997)). In those cases, however, the employees alleged that their terminations were a result of reporting a crime or cooperating in a government investigation – both claims the SJC recognizes as within the public policy exception. See <u>Mello v. Stop & Shop Co.</u>, 402 Mass. 555 (1988) (reporting criminal wrongdoing within the exception); <u>Flesner</u>, 410 Mass. at 810-811 (performing an important public deed).

4

the exception should mean that claims like this one – i.e., speculative and tenuously layered claims of purported harm to public safety – do not state a claim.

Count I of Acher's Complaint should be dismissed.

## CONCLUSION

For the further reasons above, Defendant's Motion to Compel Arbitration should be granted or, alternatively, for the reasons in Acher's Motion and this Reply, this Court should dismiss Acher's Complaint for failure to state a claim.

Respectfully submitted,

FUJITSU NETWORK COMMUNICATIONS, INC. and STEVEN UNGER

By their attorneys,

_____
Barry A. Guryan, BBO #214920
Jeffrey M. Rosin, BBO #629216
Epstein, Becker & Green, P.C.
111 Huntington Avenue
Boston, MA 02199
(617) 342-4000

Dated: December 19, 2003

## CERTIFICATE OF SERVICE

I, Jeffrey M. Rosin, hereby certify on this 19th day of December 2003, that I served a copy of this Reply by First Class Mail to counsel for the plaintiff:

    Gary H. Goldberg, Esq.
    Attorney at Law
    120 Main Street
    Worcester, Massachusetts 01608
    (508) 797-1018

                                             Jeffrey M. Rosin