UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DONALD ACHER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 03-12099-FDS |
| FUJITSU NETWORK COMMUNICATIONS, INC. | ) ) | |
| | ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ADOPTING
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

**SAYLOR, J.**

This is a lawsuit for alleged wrongful termination. Plaintiff Donald Acher has filed suit against his former employer, Fujitsu Network Communications, Inc., alleging claims for wrongful termination in violation of public policy (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and breach of contract (Count III).

Defendant Fujitsu filed a Motion to Compel Arbitration or, in the Alternative, to Dismiss the Complaint, which was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for disposition on the motion to compel arbitration and for findings and recommendations on the motion to dismiss. On November 18, 2004, the Magistrate Judge issued his Order and Report and Recommendation, which denied the motion to compel arbitration and recommended that the motion to dismiss be allowed as to Count I and denied as to Counts II and III. Plaintiff filed a timely objection to the Report and Recommendation.

Specifically, plaintiff objects to that portion of the Report and Recommendation that relates to the dismissal of the claim for wrongful termination in violation of public policy. Plaintiff contends that "his internal opposition to a proposal put forth by Fujitsu management relating to the removal, destruction or disabling of Fujitsu's competitor's equipment (located on the Verizon premises) and . . . which would have resulted in the creation of public safety concerns, warrants an exception to the employee-at-will doctrine."

Upon *de novo* review, the Court adopts the Report and Recommendation of the Magistrate Judge in its entirety, which is attached hereto as Exhibit A. With respect to the specific objection raised by plaintiff, the Court agrees with the analysis of the Magistrate Judge, and writes separately only to underscore a number of points.

## **Background**

To repeat the relevant background, plaintiff was a senior sales manager at Fujitsu, an electronics manufacturer, with responsibility for the account at Verizon, a telecommunications carrier. Plaintiff alleges that Doug Moore, the Vice President of Sales for Fujitsu (and plaintiff's supervisor), wished to increase the company's business with Verizon. Moore proposed, in internal discussions at Fujitsu, that the company make a proposal to Verizon that would involve both the purchase of a Fujitsu product called "Flashwave" and the removal or destruction of products manufactured by Fujitsu's competitors and installed at Verizon.

In order to protect the integrity of its network, Verizon adheres to the Network Equipment Building Systems ("NEBS") standards. The NEBS standards were developed by a prominent telecommunications carrier in the 1970s, and consist of a "family of documents" setting forth criteria applicable to equipment located in the central office of a telecommunications

company. Plaintiff's Opposition Memorandum, Exhibit 1. These criteria are intended to ensure that equipment and systems provide reliable service in less-than-ideal conditions, without disrupting third-party carriers or equipment and without posing undue safety risks. Plaintiff contends that the NEBS standards have been incorporated into federal telecommunications regulations and have the force of federal law.

Plaintiff was concerned that if Verizon accepted the proposal suggested by Moore, the integrity of its network would be compromised and the company would fall short of NEBS standards. Plaintiff expressed those concerns internally at Fujitsu, and successfully dissuaded management from making a proposal that called for the removal or destruction of products manufactured by Fujitsu's competitors. Verizon was unaware at the time that the proposal had even been considered, although another Fujitsu sales employee subsequently remarked at a sales presentation to Verizon that plaintiff had worked very hard to keep out of the proposal a provision requiring the damaging of competitor's equipment.

Fujitsu's ultimate proposal for Flashwave did not require the removal or destruction of their competitor's products. That proposal was accepted by Verizon. Plaintiff was terminated shortly thereafter.

## Analysis

The Magistrate Judge has recommended that plaintiff's claim for wrongful termination in violation of public policy be dismissed, reasoning:

> In this case, FNC was not seeking to conceal from Verizon its intention that upon purchasing Flashwave, Verizon would be required to remove, destroy and/or disable FNC's competitor's equipment. On the contrary, Mr. Acher's supervisor was insisting that Mr. Acher inform Verizon that this proposal was a condition of purchasing Flashwave. Verizon, not FNC, required that products it purchased

3

>comply with NEBS standards. If Verizon felt that such proposal would violate any laws or regulations or quality standards with which it was required to comply, it presumably would, and in this case did, reject the proposal. Under these circumstances, Mr. Acher cannot establish that FNC's proposal put the consumer in harm's way or threatened the public safety. Therefore, I find that, as a matter of law, Mr. Acher cannot state a claim for wrongful termination in violation of public policy.

Report and Recommendation at 16-17 (footnote omitted).

In his objection to the Report and Recommendation, plaintiff seeks to cast himself as an internal corporate whistle-blower, and argues that "[t]he protection afforded Mr. Acher should begin when he opposes the potentially unlawful conduct (public safety concerns) and not only when the concerns are imminent." Objection at 2-3. Plaintiff contends that employees cannot be expected to distinguish between public safety concerns that are "purely internal" and those that affect the general public; that if plaintiff had "contacted an outside third party to report his concerns" rather than raising them internally, "there would be little doubt that he would have a viable claim for violation of public policy"; and that the protection of the law "should be afforded Mr. Acher as soon as the whistle-blowing occurs and not at a[n] unspecified and unknown future date." *Id.* at 3.

"Under Massachusetts law, an at-will employee generally can be fired for any reason or no reason at all." *Smith v. Mitre Corp.*, 949 F. Supp. 943, 948 (D. Mass. 1997). A "narrow exception" to that rule is where the discharge is for reasons that violate clearly-established public policy. *Id.,* citing *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 810 (1991); *King v. Driscoll*, 418 Mass. 576, 582 (1994). The issue of whether a public policy is implicated is an issue of law for the court, not the jury. *Smith-Pfeffer v. Superintendent, Fernald State School*, 404 Mass.145, 151 (1989).

4

As a general matter, "[r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids." *Id.* at 149-50. Similarly, an employee may not be terminated for assisting in an ongoing governmental investigation into illegal conduct, *Flesner*, 410 Mass. at 810-811, or reporting suspected violations of safety standards that present a threat to the safety of the population at large, *Falcon v. Leger*, 62 Mass. App. Ct. 352, 364-365 (2004).

The Supreme Judicial Court, however, "consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would 'convert the general rule . . . into a rule that requires just cause to terminate an at-will employee.'" *King*, 418 Mass. at 582, quoting *Smith-Pfeffer*, 404 Mass. at 150. Thus, the public policy exception does not protect all employee acts that are "appropriate [or] socially desirable." *Smith-Pfeffer*, 404 Mass. at 150. Nor does it extend so far as to cover all acts by an employee that are directed to illegal, unsafe, or unethical conduct. *See Wright v. Shriners Hospital*, 412 Mass. 469, 472-473 (1992) (no violation of public policy where nurse fired for criticizing quality of care rendered to patients at hospital, as required by nursing ethical code); *Mistishen v. Falcone Piano Co.*, 36 Mass. App. Ct. 243, 246 (1994) (no violation of public policy where piano company employee fired for threatening to reveal unfair and deceptive trade practices).

While there is no bright line between protected and non-protected actions, the Massachusetts courts have nonetheless established some guideposts. Reporting, resisting, or refusing to participate in criminal activity is clearly protected. *See, e.g., Shea v. Emmanuel College*, 425 Mass. 761, 762-763 (1997) (employee reported theft of funds); *Smith,* 949 F. Supp.

5

at 951 (employee reported fraud and false claims by government contractor); *Hutson v. Analytic Sciences Corp.*, 860 F. Supp. 6, 10-11 (D. Mass. 1994) (employee complained about fraud in defense contract); *see also Tighe v. Career Systems Development Corp.*, 915 F. Supp. 476, 485 (D. Mass. 1996) (employee reported statutory violations to the Department of Labor, but there was no proximate cause between the termination and the protected conduct).[1]

Similarly, employees are generally protected when they report, resist, or refuse to participate in activity that presents a threat to public health or safety. *See, e.g., Falcon*, 62 Mass. App. Ct. at 364-65 (employee resisted safety standard violations that "presented a threat to the public safety and was otherwise unlawful"); *Hobson v. McLean Hospital*, 402 Mass. 413, 416-417 (1988) (employee attempted to enforce fire safety standards); *see also Mistishen*, 36 Mass. App. Ct. at 246 ("[t]he plaintiff does not claim that [defendant's] wrongdoing put the consumer in harm's way or otherwise presented a threat to public health or safety"). Nonetheless, the alleged harm or threat to health or safety must not be too remote or speculative. *See Smith-Pfeffer*, 404 Mass. at 151 (actions not protected; employee resisted reorganization of state facility for mentally retarded on the grounds that it constituted a threat to the well-being of the institution and its residents); *Wright*, 412 Mass. at 473-474 (actions not protected; employee gave critical report about the hospital to its national headquarters that did not allege behavior that rose to the level of abuse, neglect, mistreatment, or physician incompetence); *see also King*, 418 Mass. at 584 (not protected; alleged wrongful activity at corporation had only a "remote effect" on the public).

Plaintiff here contends that he was terminated for "voicing his opposition to Moore's

---

[1] The fact that the employee reported the problem internally, rather than to law enforcement or regulatory authorities, does not ordinarily compel a different result. *See Shea*, 425 Mass. at 762-63; *Falcon*, 62 Mass. App. Ct. at 364 ("we look to the substance of the complaint rather than to whom it is presented").

proposal to Verizon to have Fujitsu's competitors' equipment destroyed or made inoperable." Complaint, ¶ 31. According to plaintiff, Moore's proposal, if adopted by Verizon, would have "severely compromise[d] public safety and the NEBS standards adopted by Verizon." Id. ¶ 28.

At the outset, there is a question as to whether the proposal, if adopted, would have violated federal law. There is certainly no criminal statute implicated. Plaintiff contends that the NEBS standards "fall under the requirements/standards of the American National Standards Institute (ANSI), which is incorporated into the Telecommunications Standards and Specifications for Materials, Equipment and Construction" set forth in federal regulations at 7 C.F.R. § 1755 et seq. Plaintiff thus contends that the NEBS standards have the force of federal law.

Based on the record before it, the Court cannot ascertain which NEBS standard is applicable, or how the proposal would have violated that standard. Nor can the Court ascertain whether that particular standard, or any other NEBS standard, has been incorporated into federal law; plaintiff has not pointed to any particular provision that so indicates, expressly or implicitly.

The potential harm to public safety is likewise unidentified. Plaintiff apparently suggests that, because NEBS standards are designed to ensure that telecommunications systems are sufficiently rugged to endure various conditions (such as temperature, humidity, and vibration) and events (such as earthquake and fire), any violation of those standards might ultimately lead to a significant telecommunications systems failure, which in turn might, under some circumstances, jeopardize public safety.

Plaintiff's view of the NEBS standards need not be correct, as long as he reasonably believed that the proposal at issue violated federal law. *See, e.g., Falcon*, 62 Mass. App. Ct. at

364 (employee can be shielded from discharge of he or she reasonably, but perhaps erroneously, reports that their employer is violating the law).  Although the Court has serious doubts as to reasonableness, for present purposes, the Court will assume that he held such a belief and that it was reasonable for him to have done so.

Nonetheless, plaintiff's claim suffers from a fundamental flaw.  He contends that he was fired for opposing a proposal to Verizon that would have jeopardized public safety had it been adopted.  But the proposal at issue was not intended to remain secret; to the contrary, it was intended to be disclosed to a large and sophisticated telecommunications company, which clearly had the resources and capabilities to evaluate the merits of the proposal.  There is no suggestion that the proposal somehow would have deceived Verizon into violating NEBS standards without being aware of it, or that employees at Fujitsu and Verizon were conspiring to conceal the true nature of the proposal.

Furthermore, the alleged threat was not imminent, or even close to realization.  In the first place, the proposal would have had to have been made by Fujitsu.[2]  The proposal would then have to be accepted by Verizon before any actual *threat* to public safety could have even materialized.  There is no reason to suspect that Verizon would have readily abandoned its obligations (assuming it had such obligations) and damaged the national communications network simply to help Fujitsu's sales numbers.  Even then, the *harm* would not have materialized without still another chain of events:  the removal of the competitors' equipment would have to cause a failure of the telecommunications network that in turn would cause harm to human health or safety.

---

[2] The Court will assume, for present purposes, that the proposal would have been made but for the intervention of the plaintiff.

8

Under the circumstances, taken in their totality, the alleged threat to safety was too remote or speculative to support a claim for wrongful termination under Massachusetts law.

That is not to say that the company's actions – assuming, of course, that plaintiff's allegations are correct – are necessarily admirable. It would be better, in the abstract, to protect the employee who spoke out against a bad, or even potentially harmful, idea, not the one who suggested it. But with narrow exceptions, employers are free to hire and fire at-will employees as they please, without justification. That doctrine would be considerably eroded if the exceptions were extended to protect at-will employees who resisted bad ideas that, at worst, constituted remote or insubstantial threats to public safety. The law does not thereby seek to reward the bad and punish the good, but rather to promote and protect an important form of freedom of association from undue interference by the courts.

Accordingly, and for the foregoing reasons, the Court adopts the Report and Recommendation of the Magistrate Judge. Defendants' Motion to Dismiss is GRANTED as to Count I and DENIED as to Counts II and III.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: January 26, 2005